

DA 07-0652

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 19

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RONALD LEE VIOLETTE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Powell, Cause No. DC-06-36
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      John C. Heenan; Heenan Law Firm; Billings, Montana

      For Appellee:

      Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General; Helena, Montana

      Lewis K. Smith, Powell County Attorney, Deer Lodge, Montana

Submitted on Briefs:  October 16, 2008

Decided:  January 27, 2009

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Ronald Lee Violette ("Violette") was charged by information in the Third Judicial District Court, Powell County, with felony attempted deliberate homicide, two counts of felony criminal endangerment, felony criminal mischief, and misdemeanor criminal trespass. Following a stipulation between Violette and the State, the District Court found Violette not guilty by reason of mental disease or defect and committed him to the Department of Public Health and Human Services ("DPHHS") for a period of ten years. Violette appeals, claiming the District Court erred by denying his motion to dismiss for lack of a speedy trial. For the reasons set forth below, we dismiss the appeal.

¶2 We recharacterize the issue on appeal as follows:

¶3 Whether Violette has a right of appeal when he was found not guilty by reason of mental disease or defect.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The charges in this case stemmed from an incident that occurred at the Montana State Prison on May 11, 2006. According to reports in the record, Violette drove his vehicle to the Montana State Prison and told a checkpoint officer that he was an attorney. However, instead of proceeding towards the administration building, Violette drove to the rear guard station near the prison industries building and attempted to access a secure area. During an attempt to leave the prison in his vehicle, Violette hit a patrol vehicle head-on and ultimately pinned the officer who attempted to stop Violette between the two vehicles after the officer exited his vehicle and ordered Violette to stop. The officer was

able to remove his service revolver after Violette backed up his vehicle. As Violette drove past the officer, the officer fired at shot at Violette, striking him in the left arm.

¶5 Sheriff's deputies from Powell County were notified of the incident and were able to intercept Violette's vehicle by the cemetery in Deer Lodge, but Violette continued to lead officers on a circuitous route though the town's alleys and back streets. Eventually Violette drove onto Interstate 90 and proceeded towards Anaconda. Officers from Anaconda-Deer Lodge County ultimately took over the pursuit and followed Violette from Interstate 90 onto Highway 1 towards Opportunity. After a high-speed chase in which officers unsuccessfully attempted to force Violette's vehicle off the road, Violette pulled into a residential driveway in Opportunity where he was surrounded by officers and removed from the vehicle.

¶6 Violette was charged on May 25, 2006, with the offenses described above. On the same day, following a motion by defense counsel, the District Court ordered a psychological evaluation of Violette to determine whether he suffered from a mental disease or defect or serious developmental disability. Violette was evaluated and, pursuant to a stipulation between the parties, determined to be unfit to proceed by reason of mental disease or defect.

¶7 On or about October 23, 2006, the District Court received a letter from the Montana State Hospital stating that Violette was competent to proceed. The State filed a motion to proceed on February 14, 2007. On March 1, 2007, Violette pled not guilty to the charges and waived a jury trial. However, on April 6, 2007, the parties filed a stipulation in which Violette agreed to plead not guilty by reason of mental disease or

3

defect. The stipulation provided that "[s]ince the parties have in this agreement stipulated that the outcome of a trial would likely be a finding of [n]ot [g]uilty by reason of mental disease or defect, the State and the Defendant agree that this case can proceed as if a verdict of not guilty by mental disease or defect was returned after a jury or at a bench trial as articulated in Mont. Code Ann. § 46-14-301."

¶8 The District Court accepted the plea at the change of plea hearing on May 10, 2007, and found Violette not guilty by reason of mental disease or defect. During the hearing but immediately prior to the court's formal acceptance of the plea, defense counsel made an oral motion to dismiss the case on speedy trial grounds, alleging that 203 days had passed between the time Violette was determined competent to proceed and the change of plea hearing. However, defense counsel agreed to have the plea accepted so long as the record reflected that counsel "raised the issue for speedy trial before the Court accepted the stipulation." The court ordered the parties to brief the speedy trial issue but did not rule on the issue or render an adverse determination prior to accepting the plea. In his briefing to the District Court, Violette argued that a speedy trial analysis was triggered by the passage of 203 days from the date of the competency report on October 20, 2006, to the date the court accepted his plea of not guilty by reason of mental disease or defect on May 10, 2007. Violette argued that the delay could be longer if the court considered the additional time requested by the State to file its reply brief on the speedy trial motion.

¶9 The District Court denied Violette's motion to dismiss on speedy trial grounds on July 27, 2007. In denying the motion, the District Court considered the time between the

4

competency determination and the acceptance of the plea, finding a passage of 202 days. According to the court, however, the majority of the delay was "largely attributable to the changing of the guard in both the Powell County Attorney's office and the office of the District Court judge." Despite finding a passage of 202 days, which presumably triggers a speedy trial analysis in Montana, the District Court stated that Violette waived his right to a speedy trial by filing the stipulation with the court on April 6, 2007. The District Court nonetheless addressed Violette's argument with respect to whether he suffered prejudice as a result of the delay and determined that it was "sufficiently clear that there has not been the type of prejudice such as would warrant dismissal wherever the burden of proof would properly lie." On September 25, 2007, the District Court committed Violette to DPHHS for ten years with 504 days of credit for the time between his arrest and commitment. Violette appeals.

## STANDARD OF REVIEW

¶10 In a criminal case, the grant or denial of a motion to dismiss is a question of law which we review de novo. *State v. Howard*, 2008 MT 173, ¶ 8, 343 Mont. 378, 184 P.3d 344. Further, "[o]ur standard of review is plenary, and we determine whether a district court's conclusion is correct." *Howard*, ¶ 8 (citing *State v. Ashmore*, 2008 MT 14, ¶ 7, 341 Mont. 131, 176 P.3d 1022).

## DISCUSSION

¶11 Violette's primary contention on appeal is that the District Court erred by denying his motion to dismiss for lack of a speedy trial. According to Violette, "[a]ll of the factors recently set forth by this Court in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442,

167 P.3d 815, favor dismissal of this case on speedy trial grounds." However, in its response to a supplemental briefing request by this Court on the question of whether Violette was denied his right to a speedy trial under *Ariegwe*, the State contends that Violette's appeal must be dismissed on the basis that an appeal cannot be taken from a judgment of not guilty by reason of mental disease or defect. We agree with the State.

¶12     Under § 46-20-104, MCA, of Montana's criminal procedure statutes, "[a]n appeal may be taken by the defendant only from a final judgment of conviction and orders after judgment which affect the substantial rights of the defendant." We have previously analyzed this statute in the context of a not guilty by reason of mental disease or defect finding. In *State v. Kaplan*, 275 Mont. 108, 910 P.2d 240 (1996), the defendant was charged with seven counts of stalking. Thereafter, the defendant moved to dismiss the charges, claiming that Montana's stalking statue was unconstitutional. The court denied the motion and, following a stipulation between the parties, found the defendant not guilty by reason of mental disease or defect. The defendant was then committed to the Montana State Hospital. As in Violette's case, the defendant in *Kaplan* appealed the denial of his motion to dismiss. On appeal, we cited § 46-20-104, MCA, and noted that the defendant was precluded from appealing because there was "no judgment of conviction from which to appeal." We also noted that "[t]he denial of her motion to dismiss, absent a judgment of conviction, is not itself an appealable order." Ultimately, we concluded that the defendant in *Kaplan* could not appeal from a judgment that she was not guilty by reason of a mental disease or defect and subsequently dismissed the appeal.

¶13 Pursuant to our decision in *Kaplan*, Violette is precluded from appealing in this case on the same grounds. As in *Kaplan*, Violette was found not guilty by reason of mental disease or defect, which, as previously noted, is not a judgment of conviction from which Violette can appeal under § 46-20-104, MCA. Violette himself acknowledges that he was not convicted in this case. In the absence of a conviction, Violette cannot request relief from this Court in the form of an appeal when, under § 46-20-104, MCA, a final judgment of conviction is a prerequisite for appellate review in criminal cases. Further, as in *Kaplan*, the denial of Violette's motion to dismiss on speedy trial grounds, absent a final judgment of conviction, is likewise not an appealable order. Consequently, we hold that Violette cannot appeal from the order denying his motion to dismiss for lack of a speedy trial.

¶14 Despite this determination, defendants found not guilty by reason of mental disease or defect are not deprived of other remedies or avenues of appeal. As we noted in *Kaplan*, defendants can challenge a not guilty by reason of mental disease or defect finding through the statutory framework set forth in §§ 46-14-301 through -303, MCA. *Kaplan*, 275 Mont. at 108, 910 P.2d at 240. Further, although a denial of a motion to dismiss absent a final judgment of conviction is not an appealable order, a defendant could seek relief from the denial of a motion to dismiss by petitioning this Court for an appropriate writ. *See* M. R. App. P. 14. However, even if this Court were to treat Violette's appeal as a petition for a writ, Violette's speedy trial arguments were not properly preserved.

7

¶15 As noted in the background section, Violette originally plead not guilty to the charges in this case. Thereafter, he entered into a stipulation with the State to plead not guilty by reason of mental disease or defect. The stipulation was filed with the District Court a few days after being signed by the prosecution, defense counsel, and Violette. Over a month later, on May 10, 2007, the District Court held a change of plea hearing and accepted Violette's not guilty by reason of mental disease or defect plea. At the hearing, defense counsel made an oral motion to dismiss the case on speedy trial grounds, but agreed to have the plea accepted by the District Court instead of first receiving a determination on the motion from the court. Following briefing from the parties on the speedy trial issue, the District Court denied Violette's motion over two months after the Court accepted Violette's plea. Although the District Court allowed Violette to enter a plea and then brief and argue the denial of speedy trial, the parties and the courts cannot devise procedures not contemplated by the rules of criminal and appellate procedure.

¶16 It is well-settled that a defendant waives the right to appeal all nonjurisdictional defects upon voluntarily and knowingly entering a guilty plea, including claims of constitutional violations which may have occurred prior to the plea. *Hagan v. State*, 265 Mont. 31, 35, 873 P.2d 1385, 1387 (1994). After the plea, the defendant "may only attack the voluntary and intelligent character of his plea." *Hagan*, 265 Mont. at 35, 873 P.2d at 1387 (citing *State v. Hilton*, 183 Mont. 13, 18, 597 P.2d 1171, 1174 (1979) (overruled on other grounds). However, § 46-12-204(3), MCA, allows a defendant to reserve an issue for appeal upon entering a plea agreement. Section 46-12-204(3), MCA, provides the following:

> With the approval of the court and the consent of the prosecutor, a defendant may enter a plea of guilty or nolo contendere, reserving the right, on appeal from the judgment, to review the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, the defendant must be allowed to withdraw the plea.

Although the above statute allows a defendant to enter a plea and reserve the right to appeal certain pre-trial rulings, it requires that the plea be a guilty or nolo contendere plea and that there be an adverse ruling on the motion prior to the plea. Here, as pointed out above, Violette did not enter a guilty plea. Furthermore, rather than seeking a continuance so the court could rule on the motion, he entered his plea without first obtaining an adverse ruling. We conclude that Violette's attempt enter a plea and preserve the speedy trial issue, whether treated as an appeal or a petition for a writ, falls outside the letter and spirit of the rules of criminal and appellate procedure.

¶17 Appeal dismissed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE

9